UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**JOHN THOMAS,**
    Plaintiff,

**v.**

**UNITED PARCEL SERVICE OF
AMERICA, INC.,** *et al.*,
    Defendants.

**Case No. 1:21-cv-994-CLM**

## MEMORANDUM OPINION

Sean McKenzie—a UPS driver who described his own driving record as "horrible"—rear-ended John Thomas at nearly 60 MPH. Thomas suffered a broken neck and other injuries.

Thomas sued UPS and McKenzie, alleging five counts: (1) negligence against all defendants, (2) wantonness against all defendants, (3) negligent entrustment, hiring, training, supervision, and retention against UPS, (4) wanton entrustment, hiring, training, supervision, and retention against UPS, and (5) negligent maintenance against UPS. Thomas and UPS have moved for partial summary judgment on counts II-V. For the reasons stated below, the court will **DENY** summary judgment for counts II-IV and **GRANT** it for count V.

## BACKGROUND

1. <u>The Incident</u>: McKenzie was driving a double trailer truck for UPS on I-20 East in Cleburne County, Alabama. There was heavy traffic due to the spring NASCAR race at Talladega. McKenzie was travelling over 70 MPH when he took his hands off the steering wheel to reach down for a water bottle and took his eyes off the road for 3-5 seconds. When he returned his attention to the road, he saw that traffic had slowed down. He applied his brakes and attempted to avoid hitting the car in front of him but could not react in time. McKenzie rear-ended John Thomas while

travelling nearly 60 MPH, causing Thomas to suffer a broken neck and other injuries.

2. The CMS: The truck McKenzie was driving was outfitted with a collision mitigation system, designed to alert the driver if the truck was approaching another vehicle too quickly. But the CMS did not alert McKenzie he was approaching Thomas's vehicle.

3. McKenzie's Driving Record: McKenzie began working for UPS on October 23, 2006. His driving record was less than stellar leading up to the April 2021 accident here:

| YEAR | Driving Incident(s) |
|---|---|
| 2007 | - Involved in an accident that UPS determined was preventable or avoidable<br><br>- Received a citation for improper lane change in UPS vehicle |
| 2008 | - Involved in an accident that UPS determined was preventable or avoidable<br><br>- Observed speeding and "swerving in and out of traffic" with "both feet propped on the dash and leaned back talking on his cell phone." |
| 2011 | - Involved in a collision in his personal vehicle, received a citation<br><br>- Received a citation for speeding in personal vehicle |
| 2012 | - Involved in an accident that UPS determined was preventable or avoidable |
| 2014 | - Involved in a collision in his personal vehicle, received a citation<br><br>- Written up for unbroken driving time and speeding |

|      |   |
|------|---|
|      | - Received citation for running a stop sign in personal vehicle |
| 2015 | - Received citation for not wearing a seat belt in personal vehicle |
| 2016 | - Arrested for DUI, pleaded guilty to reckless driving, and received 60-day jail sentence |
| 2017 | - Received termination notice for failing to placard hazardous material, but was not terminated |
| 2018 | - Received citation for impeding traffic with a parked vehicle |
| 2020 | - Involved in an accident that UPS determined was preventable or avoidable<br><br>- Received a disciplinary notice for improper pre-trip inspection<br><br>- Received two suspension notices for safety violations and speeding, respectively, but was never suspended<br><br>- Received two termination notices for violating safety rules, including disabling the CMS in a truck, but was never terminated |

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Thomas and UPS do not challenge Count 1, Negligence. The court addresses Counts II-V below.

### Count II: Wantonness (McKenzie and UPS)

Thomas sued McKenzie for wanton driving that resulted in the collision and injuries, and UPS because McKenzie was acting in the scope of his employment with UPS, causing UPS to be vicariously liable for McKenizie's wantonness. (Doc. 46 at 10). UPS does not challenge that McKenzie was acting in the scope of his employment with UPS. Instead, McKenzie and UPS argue that McKenzie's actions do not meet the high standard required for wantonness. (Doc. 69). But the court finds that a reasonable jury could find that McKenzie's conduct was wanton.

"Wantonness" is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). "[I]t is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is "conscious" that injury will likely or probably result from his actions." *Id.* In fact, "[a] wantonness count should go to the jury if there is any evidence to support a finding of wantonness." *Bishop v. Poore*, 475 So. 2d 486, 487 (Ala. 1985)

The defendants argue that McKenzie's conduct was not wanton because "[h]e simply made a mistake while attempting to return his water bottle to the cup holder by taking his eyes off the roadway in front of him for a few seconds." (Doc. 69 at 13). Thomas responds that McKenzie understood his conduct posed a risk of serious injury, failed to observe traffic ahead of him before taking his eyes off the road and hands off the steering wheel, and that his actions were inherently reckless such that wantonness could be inferred from his conduct. (Doc. 78). Thomas also contends that traffic slowed down gradually on I-20 before the accident,

giving McKenzie time to slow down had he not been distracted. (Doc. 78 at 2).

A reasonable jury could find that McKenzie knew or should have known that taking his hands off the steering wheel and looking away from the road for 3-5 seconds while driving a large truck down the interstate at 70 MPH in heavy traffic would likely cause an accident. Indeed, the Alabama Supreme Court has held that a defendant's "failure to look" in the direction of the plaintiff is evidence of wantonness. *Bishop v. Poore*, 475 So. 2d at 487. And this court has held that failing to carefully observe traffic, failing to yield to a vehicle, and running a stop sign is sufficient evidence for a wantonness claim to survive summary judgment. *Vasser v. Tezi Express, LLC*, 2022 WL 19625, at *3 (N.D. Ala. Jan. 3, 2022); *see also Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.").

So the court finds that Thomas has presented sufficient evidence to support a jury finding of wantonness on Count II.

**Count III: Negligent and Wanton Entrustment (UPS)**

1. <u>Negligent Entrustment</u>: For negligent (as opposed to wanton) entrustment, Thomas must prove: "(1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005). UPS argues that McKenzie was competent to drive, and that even if he was not, UPS had no reason to believe McKenzie was incompetent on the day of the accident, and therefore summary judgment is appropriate on this count. (Doc. 69 at 13).

"[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413–14. A plaintiff can show incompetence with evidence that the driver was "unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions,

including general incompetence or habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005) (quotation marks omitted). Showing "evidence of previous acts of negligent or reckless driving" may also suffice. *Id.* And as the Alabama Supreme Court explained, "incompetency is connected conjunctively with carelessness, indifference, heedlessness and recklessness." *McGowin v. Howard*, 36 So. 2d 323, 325 (Ala. 1948).

Here, a reasonable juror could find that McKenzie was generally incompetent to operate the UPS truck. Thomas has produced the following evidence to show McKenzie was incompetent to drive:

- He was involved in 7 collisions;
- He received 18 citations or warnings from law enforcement (5 while operating a commercial vehicle);
- He was involved in a drunk-driving incident that was later reduced to reckless driving;
- He received two termination notices from UPS in 2020 for violating safety rules (but was not terminated);
- He received two suspension notices from UPS in 2020 for violating safety rules (only one of which led to a one-day suspension);
- His commercial license was disqualified in late 2017 and early 2018; and,
- He received many write-ups from UPS for unsafe practices.

(Doc. 78 at 26). McKenzie even testified that "my record is horrible." (Doc. 67-2 at 69). Viewed in a light most favorable to Thomas, a jury could find that McKenzie's driving record exhibits a "general incompetence," *Edwards*, 926 So. 2d at 322, and a pattern of "carelessness, indifference, heedlessness and recklessness." *McGowan*, 36 So. 2d at 325. And a reasonable jury could find that with an investigation, UPS could have deemed McKenzie incompetent to drive.

UPS argues McKenzie was competent to drive because (1) most of his accidents were non-reportable or non-preventable, (2) he had only one known citation in the three years before the accident, and most of his

driving incidents occurred far in the past and were infrequent for the time McKenzie was on the road for work, and (3) many incidents occurred in his personal, rather than commercial, vehicle. But this court has considered all types of accidents over a long time period to determine driver incompetence. *Vasser*, 2022 WL 19625, at *7 (considering over 15 years of incidents in both personal and commercial vehicles). So each of these arguments must fail.

Thomas has presented sufficient evidence to support a jury finding that McKenzie was incompetent to operate the UPS truck in 2021, and that UPS could have discovered his incompetence with a reasonable investigation. So the court denies summary judgment on that count.

2. <u>Wanton entrustment</u>: Thomas's claim for wanton entrustment also survives summary judgment. Given the evidence referenced above, a reasonable jury could find that UPS "entrusted the [double-trailer truck] to [McKenzie] while knowing that th[e] entrustment would likely or probably result in injury to others." *Jordan v. Calloway*, 7 So. 3d 310, 317 (Ala. 2008). So the court denies summary judgment on that count, too.

## Count IV: Negligent and Wanton Hiring, Training, Supervision, and Retention (UPS)

1. <u>Negligent hiring, training, supervision, and retention</u>: For the negligent (as opposed to wanton) part of Count IV, Thomas must prove: (1) McKenzie committed an Alabama common-law tort; (2) that UPS knew of McKenzie's incompetence or would have known of it through proper diligence; and (3) that UPS failed to adequately respond after gaining notice of McKenzie's incompetence. *Vasser*, 2022 WL 19625, at *9.

As discussed above, a reasonable juror could find that McKenzie was negligent (an allegation neither defendant contests) or wanton; that UPS knew, or with a proper investigation would have known of McKenzie's incompetence; and that UPS's response to McKenzie's incompetence was inadequate. While UPS argues it conducts ongoing training that was an adequate response to any incompetence, a reasonable

juror could conclude that the training was inadequate. So the court denies summary judgment on this count.

2. <u>Wanton hiring, training, supervision, and retention</u>: Thomas's related wantonness claim also survives summary judgment. A reasonable juror could find that UPS hired, trained, supervised, and retained McKenzie with knowledge of McKenzie's incompetency and being conscious that, from doing so, injury will likely or probably result. *See Ex parte Essary*, 992 So. 2d at 9. So the court denies summary judgment on this count.

**Count V: Negligent Maintenance (UPS)**

1. <u>Violation of written regulations</u>: Thomas argues that Federal Motor Carrier Safety Regulations and Alabama tort law imposed a duty on UPS to maintain the truck's collision mitigation system. Thomas argues that 49 CFR 396.3(a) imposed a legal duty on UPS to maintain the CMS. That CFR reads:

> **(a) *General.*** Every motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control.
>
> > **(1)** Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems.

49 CFR 396.3.

According to Thomas, the collision mitigation system falls under "parts and accessories which may affect safety of operation[.]" 396.3(a)(1). The court disagrees. The phrase "parts and accessories" is modified by the

phrase "which may affect safety of operation," meaning that only some parts or accessories are subject to the rule. And the list of parts and accessories that follow the modifier—*i.e.* "frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems"—help define/limit the types of parts and accessories covered by the rule.

The associated words canon, or *noscitur a sociis*, commands that "[w]hen several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 31, at 195 (2012). Put simply, "birds of a feather flock together." *Id.* Relevant to section (a)(1), "the most common effect of the canon is not to establish which of two totally different meanings applies but rather to limit a general term to a subset of all the things or actions that it covers . . . ." *Id.* at 196.

So the "parts and accessories" covered by section (a)(1) are limited to parts and accessories that share a common characteristic with "frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems." 49 CFR 396.3(a)(1). That common characteristic is that each part or accessory must be in working condition for a motor vehicle to operate safely. Indeed, without a frame, suspension, axles, wheels, or steering, no truck could operate on the road. The same is true for other parts and accessories that may fall under section (a)(1) but are not explicitly listed, such as a drivetrain, brakes, a radiator, a transmission, and so on.

Unlike these necessary safety parts, a collision mitigation system— which cars safely operated without for most of their history (and many still do today)—is not required for a motor vehicle to operate safely. A CMS is much more like a backup camera, cruise control, lane assist system, or tire pressure monitors. While a CMS is a recent technological development that may *assist* a driver in safely operating a motor vehicle,

Case 1:21-cv-00994-CLM   Document 84   Filed 12/22/22   Page 10 of 11


it is not required for a motor vehicle to operate safely. Thus, applying the associated words canon to (a)(1), a CMS does not fall under the ambit of the regulation, and the regulation does not impose a duty on UPS to maintain the CMS on its trucks.

2. Violation of common law duty: Thomas also argues that Alabama common law imposes a duty on UPS to maintain the CMS. In support, Thomas cites one case from the Western District of Pennsylvania and a recent Alabama Supreme Court decision. *See Shimmel by Shimmel v. Navistar Int'l Corp.*, 440 F. Supp. 3d 438, 447 (W.D. Pa. 2020); *Lands v. Ward*, 2021 WL 2622056, at *5 (Ala. 2021).

In *Shimmel*, the district court, applying Pennsylvania law, held that the plaintiff sufficiently pled a claim for negligence by alleging the defendant "acted negligently in failing to equip the Truck with collision avoidance systems." 440 F. Supp. 3d at 447. Thomas argues that this court should hold the same. But Alabama law isn't that broad. In *Lands*, the Alabama Supreme Court held that there is a general "common-law duty of vehicle owners to inspect their vehicles and maintain them in safe condition." 349 So. 3d at 225. And the Alabama Supreme Court has held that "[i]f the use of [an] instrumentality threatens serious danger to others unless it is in good condition, there is a duty to take reasonable care to ascertain its condition by inspection." *Motor Terminal & Transp. Co. v. Millican*, 12 So. 2d 96, 99 (1943). So while in some cases a defendant can be held liable for failing to maintain their vehicle when doing so would pose a serious danger to others, UPS's alleged failure to maintain the CMS does not subject it to a negligent maintenance claim in Alabama. So the court grants UPS's motion for summary judgment on the negligent maintenance count.

## CONCLUSION

For these reasons, the court **DENIES** UPS's motion for summary judgment on counts II-IV, but **GRANTS** that motion for count V. This case will move to trial on Counts I-IV.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** on December 22, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE